# KIRTON LAW FIRM

*Marlon G. Kirton, Esq.*

*Nassau County:*
*175 Fulton Avenue, Suite 305*
*Hempstead, New York 11550*
*Tel. # (516) 833-5617*
*Fax # (516) 833-5620*

December 21, 2020

VIA ELECTRONIC FILING

Hon. P. Kevin Castel
District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *U.S. v. Nicholas Joseph, 20 cr. 603 (PKC)*

Dear Judge Castel:

    I represent Nicholas Joseph in the above-referenced matter. Mr. Joseph is remanded without bail. I request that Mr. Joseph be granted bail pursuant to 18 U.S.C. 3142(a)(1)(2). The next scheduled conference date before this Court is January 4, 2021.

**PROPOSED BAIL PACKAGE**

    The defense requests the following bail package:

1. $250,000 PRB, 2. Co-signed by twelve (12) Financially responsible persons, 3. Surrender of all passports and no new applications, 4. Travel restricted to the Southern District of New York, Eastern District of New York and the Eastern District of Pennsylvania, 5. Pretrial Supervision, 6. Home detention with electronic monitoring, 7. Defendant to live with his mother in Philadelphia, 8. Defendant to attend out-patient mental health and drug abuse counseling, 9 Defendant to have no contact with co-defendants unless Attorneys are present.

## BAIL REFORM ACT

The Bail Reform Act of 1984 (B.R.A.) allows a district court to detain a defendant, pending trial, after an adversarial hearing.[1] At the hearing, a defendant is entitled to 1. Counsel, 2. The right to testify, 3. The right to proffer evidence, and 4. The right to cross-examine witnesses presented by the Government.[2] District Courts are required by Congress to consider the nature and seriousness of the charges, the strength of the Government's case, the history and characteristics of the defendant, and the seriousness of the danger to the community if the defendant is released.[3] If, after a hearing, the district court finds that no condition or combination of conditions will reasonably assure the defendant's appearance as required and or the safety of any other person and the community is in danger, the district court shall order the defendant's detention before trial.[4]

Presented with a motion for detention[5] the district court must conduct a step by step inquiry: First, the court must determine whether the defendant presents a risk of flight; Second, if the answer is yes, then the court must determine whether there are conditions or a combination of conditions that reasonably will assure the presence of the defendant at trial if he is released.[6] The same inquiry applies to dangerousness.[7] Except in the second inquiry, the court must determine whether, if released, the defendant will pose a danger to the community.[8]

---

[1] *United States v. Salerno,* 481 U.S. 739, 741 (1987).
[2] *Id.* 705-706.
[3] *Id.*
[4] *BRA* 3142 ( e )(1).
[5] *The Government filed a detention motion on December 14, 2020.*
[6] *United States v. Friedman,* 837 F.2nd 48, 49 (2nd Cir. 1988)
[7] *United States v. Madoff,* 586 F.Supp.2d 240, 247 (S.D.N.Y. 2009)
[8] *Id.*

**RISK OF FLIGHT**

The defense proposes home detention with electronic monitoring. Mr. Joseph will reside with his mother, aunt, and grandmother in Philadelphia. The address is noted in the Pretrial Services report. Mr. Joseph's grandmother owns the home, and Nicholas will have his own room. Nicolas has twelve co-signers for his bond. All of the persons are employed and are U.S. citizens. The co-signers include seven relatives, his girlfriend, and a social worker. Nicholas will be able to appear remotely, via video or phone at his grandmother's residence. Nicholas' aunt will drive him to and from Court in her vehicle, as needed. Finally, Nicholas will be able to remotely attend drug/mental health treatment through the Getting Out Staying Out Program (G.O.S.O.).[9] G.O.S.O. is a reentry program that works with young men ages 16-24.[10] The focus is on education, employment, and emotional well-being.[11]  G.O.S.O. has virtual technology that would allow Nicholas to attend treatment sessions remotely. Nicholas's home will allow him to have privacy during these sessions. The defense argues that Nicholas is not a risk of flight.

**DANGER TO THE COMMUNITY**

Nicholas will be on home detention with electronic monitoring. He will have no contact with his co-defendants while the case is pending. Nicholas is not a leader or organizer within the charged indictment. Nicholas has a long history of untreated mental illness. The defense has had detailed conversations with his family regarding the matter. Nicholas's mother has advocated tirelessly on behalf of her son since he was diagnosed with A.D.H.D. at seven years old. He was in special education most of his life. He was subsequently diagnosed with bipolar disorder. He started getting arrested around 15 years old. He had several incidents at Rikers Island because he

---

[9] *See the attached letter.*
[10] *Id.*
[11]

3

was not on his medication. Nonetheless, Nicholas earned his G.E.D.

G.O.S.O. will be able to facilitate mental health treatment and can arrange for him to get the proper medication for his conditions. Nicholas will be at home, on medication, and getting ongoing treatment while the case is pending. The defense argues that Nicholas is not a danger to the community.

**COVID-19**

As of December 21, 2020, the new strain of coronavirus, which causes COVID-19, has infected over 76.9 million people, leading to at least 1.6 million deaths worldwide.[12] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[13] Governor Andrew Cuomo declared a State of Emergency on March 7, 2020.[14] Mayor Bill DiBlasio declared a State of Emergency in New York City on March 12. 2020, and banned gatherings of over 500 people.[15] As of December 21, 2020, there are 848,042 positive cases (28,598 deaths) in New York State[16]. As of December 21, 2020, there are 432,592 positive cases and 16,286 deaths in the State of New Jersey.[17]

The C.D.C. has issued guidance that individuals at higher risk of contracting COVID-19—adults over 60 years old and people with chronic medical conditions such as lung disease, heart disease, and diabetes—take immediate preventative actions, including avoiding crowded

---

[12] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (April 7, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
[13] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[14] *At Novel Coronavirus Briefing, Governor Cuomo Declares State of Emergency to Contain Spread of Virus*, New York State (March 11, 2020) *at* https://on.ny.gov/2TKzIoz.
[15] *DeBlasio Declares State of Emergency in N.Y.C. and Large Gatherings Are Banned*, New York Times (March 12, 2020)
[16] *Novel Coronavirus (COVID-19),* New York State Department of Health (April 7, 2020) *at* https://on.ny.gov/2vfFQvy (updating regularly).
[17] *www.covid19.nj.gov.*

areas and staying home as much as possible.[18]

## CONDITIONS OF CONFINEMENT IN GENERAL

Conditions of pretrial confinement create the ideal environment for the transmission of contagious diseases.[19] Inmates cycle in and out of the Bureau of Prisons (B.O.P.) pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[20] Many people who are incarcerated also have chronic conditions, like diabetes or H.I.V., which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[21] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[22] In China, officials have confirmed the coronavirus was spreading at a rapid pace in Chinese prisons, counting 500 cases.[23] Secretary of State Mike Pompeo has called for Iran to

---

[18] *People at Risk for Serious Illness from COVID-19*, C.D.C. (March 12, 2020) *at* https://bit.ly/2vgUt1P.

[19] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[20] Laura M. Maruschak et al. (2015). *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491*. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[21] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[22] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[23] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[24]  Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[25]  Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners.[26]

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge.  As Judge Weinstein held, "We do not punish those who have not been proven guilty.  When we do punish, we do not act cruelly.  The continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy."  *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC").  *See also United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions, and open sores released on home detention because of his medical conditions); *United States v. Johnston*, No. 17-00046 (R.M.M.) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to the custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143

---

[24] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) at https://cnn.it/2W4OpV7.

[25] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) at https://apnews.com/af98b0a38aaabedbcb059092db356697.

[26] *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) at https://theappeal.com

(D.P.R. 2002) (badly wounded defendant released to the custody of his relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Nicholas Joseph will yield, relative to the heightened health risks posed to Nicholas Joseph during this rapidly encroaching pandemic. *See United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where the defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

## CONCLUSION

For all of the above reasons, Nicholas Joseph should be granted release on bond.

Respectfully submitted,

s/Marlon G. Kirton
Marlon G. Kirton, Esq.


cc: Andrew Chan, Assistant United States Attorney (via electronic mail)