UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                20-cr-603 (PKC)

                -against-                                        OPINION
                                                                AND ORDER

NICHOLAS JOSEPH,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Following his conviction at trial on all five counts, defendant Nicholas Joseph

moved for a partial judgment of acquittal and a new trial pursuant to Rules 29 and 33, Fed. R.

Crim. P.  The Court denied the motions in an Opinion and Order of February 4, 2022 (the

"February 4 Opinion").  (ECF 100.)  At 7 p.m. on the literal eve of sentencing, defense counsel

filed a second motion for a new trial, five pages in length, this time on the grounds of newly

discovered evidence.  (ECF 117.)  Because the sentencing had been repeatedly adjourned at the

request of the defense (ECF 98, 102, 105, 111) and after hearing the views of counsel (6/30/22

Tr. 11-12), the Court declined to further adjourn the sentencing.[1]

        At sentencing, the Court adopted the advisory guidelines range of 360 months to

life without objection from the defendant.  (Id. at 7-9.)  The government urged a sentence of "at

least" 300 months imprisonment (id. at 41) and the Office of Probation recommended a sentence

of 480 months.  The Court sentenced defendant to principally 264 months imprisonment, 96

months below the bottom of the advisory guidelines range.  (ECF 122.)

---

[1] Defense counsel wrote the day before the sentencing that he had "discussed the motion in detail with the
Government this morning.  I expect the government to respond either tonight or tomorrow morning.  I will not
request an adjournment of tomorrow's sentencing hearing if the Court denies the motion."  (ECF 117.)

Defendant appealed.  The Court took no action on the motion for a new trial during the pendency of the appeal.  See Rule 33(b)(1), Fed. R. Crim P. ("If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.").[2] On June 20, 2023, the undersigned was first informed by appellate counsel that the appeal had been stayed by the United States Court of Appeals for the Second Circuit pending a ruling on Joseph's second motion for a new trial.  (ECF 136.)

For reasons that will be explained, the Court will deny the motion principally because each of the two witnesses who are the basis for the claim of newly discovered evidence were known to the defense prior to trial.  For the purpose of this motion, the Court accepts the defense version of the witnesses' testimony and thus no evidentiary hearing is necessary.

The Court reviewed at length the trial evidence and need not do so again.  The reader is referred to the Court's February 4 Opinion.

Overview of the Charges

Defendant was charged in a second superseding indictment with five counts: Count 1, participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d); Count 2, attempted murder and assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959; Count 3, using and carrying a firearm, which was discharged, in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); and Counts 4 and 5, possession of firearms and ammunition while a convicted felon, in violation of 18 U.S.C. §§ 922(g).  (ECF 33.)

At trial, the government's theory of the case, well-supported by evidence, was that defendant was a member of the Castle Hill Crew, a criminal enterprise based in the

---

[2] The Court acknowledges that it had the authority to deny the motion or issue an indicative ruling that it would grant the motion if the matter were remanded to the district court.  United States v. Jiau, 545 Fed. App'x 34, 36 (2d Cir. 2013).

Soundview neighborhood of the Bronx, and that on April 28, 2017, he discharged a firearm at the neighborhood's Story Playground, causing a 12-year-old boy, an innocent bystander, to be shot in the hip.  The government argued to the jury that the April 28 shooting was an act of retaliation for an unsuccessful attempt by a member of a rival gang, the Monroe Houses Crew, to attack defendant the day before.  The government offered evidence of defendant's conviction of a felony, defendant's knowledge of his conviction and his knowing possession of two firearms. The jury returned guilty verdicts on all five counts.

At sentencing, defendant admitted to the shooting but said his motive was "to look good for the female," denying that it had been for the purpose of maintaining or increasing his position within the gang.  (6/30/22 Tr. at 29.)

Standards for a Rule 33 Motion Based Upon Newly Discovered Evidence

"Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that '(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.'"  United States v. Forbes, 790 F.3d 403, 406-07 (2d Cir. 2015) (quoting United States v. Owen, 500 F.3d 83, 88 (2d Cir. 2007)).

The "Newly Discovered" Evidence

In the motion for a new trial, defendant asserts that the two witnesses, Nasir Vincent and Latief Jenkins, would contradict the government's evidence, specifically the testimony of cooperator Angel Arroyo, that the April 28, 2017 shooting was in retaliation for an attack on defendant the day before by a member of the Monroe Houses Crew.  Arroyo had testified that he observed rival gang members Nasir Vincent and Latief Jenkins and the defendant

and that he heard but did not see a single gunshot and observed defendant running in the opposite direction of Vincent and Jenkins.

The government asserts that the testimony of the two witnesses fails the standard for a motion for a new trial because both were known to the defense prior to trial, and were disclosed in a motion in limine six weeks prior to trial and in 3500 material produced three weeks prior to trial.  Indeed, in the case of Vincent, the defense subpoenaed the witness for trial, asserted to the Court that he had testimony that would exonerate defendant, but the witness, through his attorney, stated that he would assert his privilege against self-incrimination.

According to the defendant, Nasir Vincent has stated since the trial that "I never met Nicholas Joseph, on April 28, 2017, in the vicinity of the Story Avenue Playground in the Bronx.  Nicholas Joseph never shot at me on April 28, 2017, in the vicinity of the Story Avenue Playground in the Bronx.  I never told Angel Arroyo that Nicholas Joseph shot at me on April 28, 2017."  (ECF 117 at 4.)  A subsequently filed declaration by Vincent repeats the foregoing statements and adds that "I never met NICHOLAS JOSEPH on April 27, 2017, in the vicinity of the James Monroe Houses in the Bronx.  I never shot at NICHOLAS JOSPEH, that day, April 27, 2017, in the vicinity of the James Madison Houses."  (ECF 132-1.)

Latief Jenkins, according to the defense, has stated that "I don't recall seeing Nicholas Joseph in the vicinity of the James Monroe Houses in the Bronx on April 27, 2022.  I don't recall seeing Nicholas Joseph in the vicinity of the Story Avenue Playground in the Bronx on April 28, 2017."  (ECF 117 at 5.)  No declaration by Jenkins has been submitted.[3]

---

[3] A fair reading of the defendant's reply submission is that defendant has abandoned any argument based on Jenkins from whom they were unable to secure a declaration.  The Court nevertheless considers the claim with regard to Jenkins.

It is incontrovertible that the identities and roles of Nasir Vincent and Latif Jenkins were disclosed by the government in their motion in limine filed with the Court on July 23, 2021, six weeks prior to trial:

> CW-1 will testify about how members of the Monroe Houses Crew saw the defendant in the vicinity of the Monroe Houses and then decided to shoot at the defendant. CW-1 provided a gun to Monroe Houses Crew member Nasir Vincent, and CW-1 then heard the shots seconds later. After Vincent fired at the defendant, CW-1 and another member of the Monroe Houses Crew chased after the defendant, attempting to shoot him. The next day, CW-1 was present in the vicinity of the Monroe Houses when he saw Vincent and another member of the Monroe Houses Crew named Latif Jenkins walking toward the Story Playground. CW-1 then heard gunshots coming from the direction of the Story Playground, and saw Vincent and Jenkins run back from the direction of the playground just seconds after the shots were fired. Jenkins immediately told CW-1 and others that the defendant had fired shots at them in the playground, and also provided a description of what the defendant had been wearing when he fired the shots.

(ECF 30 at 9-10; emphasis added.)  CW-1, Angel Arroyo, testified at trial substantially consistent with the foregoing.  (9/15/21 Tr. 335-37, 346-55.)[4]  The identities and roles of both Vincent and Jenkins also appeared in the 3500 material produced on or about August 25, 2021, three weeks before trial.  (ECF 118 at 2.)

The significance of Vincent was not lost on defense counsel who disclosed shortly before jury selection his intention to call Vincent as a witness.  (9/13/21 Tr. at 64-65.)  The government raised with the Court certain logistical issues that may arise by reason of the pandemic from Vincent's production, and defense counsel was asked by the Court to respond: "Your Honor, I have not yet asked the Court to intervene in this matter.  The government knows

---

[4] The government's later reply brief on its in limine motions, filed before trial, disclosed that "[t]he Government expects that CW-1's testimony will include recounting statements made to him by . . . Nasir Vincent and Latif Jenkins, in the moments after the Playground Shooting, during which they identified the defendant as the shooter and provided a description of what the defendant had been wearing."  (ECF 54 at 5.)

the name of the witness, the government has an offer of proof as to what the witness is going to testify to.  I've spoken to that witness's attorney."  (9/13/21 Tr. at 64.)  "I'm trying to make arrangements to have Mr. Vincent brought to court on Wednesday to see whether or not he would invoke or testify."  (Id. at 65.)  "I also have a subpoena just in case the Court needs to sign it."  (Id.)

A subpoena was ultimately issued and served for the testimony of Vincent. (9/15/21 Tr. at 338.)  His attorney appeared before the Court to advise that if called her client would assert his Fifth Amendment rights and that she had confirmed this after lengthy conversations with her client.  (Id.)  Defense counsel described Vincent as an "essential witness" and asked that he publicly invoke his rights.  (Id.)  The Court asked if counsel had support for the request and he had none beyond the Sixth Amendment, presumably the confrontation clause. (Id. at 338-39.)  The Court concluded that the probative value, if any, of having the witness appear before the jury and invoke the Fifth Amendment to all questions other than his name was slight and was substantially outweighed by the danger of unfair prejudice.  (Id. at 340-41.)  The Court further concluded that, based upon the representations of Vincent's counsel, there was no need for the witness to appear out of the presence of the jury.[5]  (Id.)  Vincent's counsel appeared before the Court and confirmed that  she had spoken at length to Vincent and he would neither testify nor speak with defense counsel.  (Id. at 338, 341.)  Defense counsel made no further application to the Court.

As far as the record or involvement of the Court is concerned, there was no similar effort made by the defense to secure the testimony of Jenkins.  This is understandable

---

[5] Issues of pandemic precautions made the unnecessary production of an incarcerated witness ill-advised.  Of course, had it been constitutionally required—and it was not—the Court would have ordered it.

because his information about the key events of April 27 and 28 consists of the absence of a

recollection.  ("I don't recall. . . .")

   In <u>United States v Owen</u>, 500 F.3d 83, 92 (2d Cir. 2007), the Circuit reversed the

district court's grant of a motion for a new trial based on newly discovered evidence consisting

of the testimony of a co-defendant who had previously invoked his Fifth Amendment right not to

testify at a joint trial with Owen.  In the words of the <u>Owen</u> panel:

> We have never before held that a new trial may be granted pursuant
> to Rule 33 on the basis of evidence that was known by the defendant
> prior to trial, but became newly available after trial, and we decline
> to do so here. As Judge Friendly observed, albeit in *dicta,* courts
> "must exercise great caution in considering evidence to be 'newly
> discovered' when it existed all along and was unavail[a]ble only
> because a co-defendant, since convicted, had availed himself of his
> privilege not to testify." <u>United States v. Jacobs</u>*,* 475 F.2d 270, 286
> n.33 (2d Cir. 1973).   Following this counsel, we now join the
> majority of circuits to have addressed the issue and hold that Rule
> 33 does not authorize district courts to grant new trials on the basis
> of such evidence since it is not newly discovered, but merely newly
> available.

<u>Id.</u> at 89.

   The Court applied <u>Owen</u> to a claim of newly discovered evidence based upon a

co-conspirator's initial invocation of the Fifth Amendment followed by a post-trial decision to

waive Fifth Amendment protections and offer of testimony to exonerate the defendant, holding

that the evidence was newly available but not newly discovered.  <u>United States v. Forbes</u>, 790

F.3d 403, 410-11 (2d Cir. 2015).  In <u>Forbes</u>, the Court held that "evidence is excluded from the

meaning of 'newly discovered' under Rule 33 where (1) the defendant was aware of the evidence

before or during trial, *and* (2) there was a *legal* basis for the unavailability of the evidence at

trial, such as the assertion of a valid privilege.  This second requirement reflects the delicate

balance between protecting the finality of judgments and the 'interest of justice' that Rule 33

seeks to protect, and it is consistent with our decision in Owen." Id. at 408 (emphasis in original).

The circumstance of Vincent falls squarely within Forbes. Vincent's identity and alleged role were known six weeks prior to trial, he was considered by the defense to be an essential witness, a proffer of his testimony was made to the government, but his testimony was unavailable because of the invocation of the Fifth Amendment privilege. Vincent's lawyer appeared in Court in the presence of the government and defense counsel. No claim has ever been made that his invocation of the privilege was without a legal basis. While Vincent was neither a co-defendant nor a co-conspirator of the witness but instead a member of a rival gang, the holding of Forbes controls; the evidence is at most newly available but not newly discovered.

The circumstance of Jenkins is slightly different. His identity and alleged role were disclosed by the government six weeks before trial. There is nothing in the record showing that he was subpoenaed by defense counsel or sought to be subpoenaed by defense counsel or told the defense that, if subpoenaed, he would not testify invoking a privilege. Jenkins's present statement is simply not newly discovered evidence and there is no added wrinkle arising from an earlier claim of privilege. As a separate ground for disqualification of Jenkins's testimony as a basis for a new trial under Rule 33, the admission of Jenkins's "I don't recall" testimony "would [not] probably lead to an acquittal." United States v Siddiqi, 959 F.2d 1167, 1173 (2d Cir. 1992).

CONCLUSION

Defendant's motion for a new trial on the basis of newly discovered evidence is DENIED.  (ECF 117.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 27, 2023